IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SHARON HEARN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-562-SDJ-KPJ |
| | § | |
| KILOLO KIJAKAZI,[1] | § | |
| *Acting Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Sharon Hearn ("Ms. Hearn") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits and supplemental security income. Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

### I.   APPLICABLE LAW

A.   **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

1

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B.   Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. Hearn was born in 1966, completed tenth grade, and last worked as a cashier at Wal-Mart until she stopped working in 2015.[4] *See* Tr. 60–61, 67, 81, 268. On September 18, 2018, Ms. Hearn filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *See* Tr. 27, 219–30. In both applications, Ms. Hearn alleged disability since January 23, 2015, due to diabetes, thyroid issues, high blood pressure, diverticulitis, back disc disease, and depression. *See* Tr. 81–82, 96–97. The Social Security Administration ("SSA") denied Ms. Hearn's claims initially on November 27, 2018, and upon reconsideration on March 29, 2019. *See* Tr. 153–58, 162–65. Thereafter, Ms. Hearn filed a written request for a hearing. *See* Tr. 166–67. On September 16, 2020, Administrative Law Judge Thomas John Wheeler (the "ALJ") held a hearing. *See* Tr. 53–78. The hearing was attended by Ms. Hearn, her attorney, and a vocational expert (the "VE").[5] *See* Tr. 53.

On October 28, 2020, the ALJ issued an unfavorable decision denying Ms. Hearn's claims. *See* Tr. 27–43. In his decision, the ALJ found that Ms. Hearn met the insured status requirements of the Social Security Act (the "Act") through June 30, 2020. *See* Tr. 30. At step one, the ALJ found that Ms. Hearn had not engaged in substantial gainful activity since January 23, 2015, her alleged onset date. *Id*. At step two, the ALJ found that Ms. Hearn had the following severe impairments: cervical degenerative disc disease and radiculopathy, lumbar spondylosis, type II

---

[4] Documents 8-1 through 8-31 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] During the hearing, Ms. Hearn sought to reopen her prior applications and amend her alleged onset date to March 19, 2016. *See* Tr. 27, 57–58. The ALJ denied the request, finding that the denial of Ms. Hearn's prior disability applications was final and binding under the doctrine of res judicata and administrative finality. *Id.* Accordingly, the ALJ found that: "The beginning date for the period of time under consideration in regard to [Ms. Hearn's] current claim for disability, therefore, can be no earlier than October 6, 2017, the day after the prior [ALJ] decision." *See* Tr. 26–27.

diabetes mellitus, obesity, and depression. *Id*. At step three, the ALJ found that none of Ms. Hearn's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 31–32. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Hearn's RFC. *See* Tr. 32–42. The ALJ found Ms. Hearn had the RFC to:

> lift and/or carry 20 pounds occasionally, 10 pounds frequently, push and/or pull unlimited except for the lift and/or carry restrictions, sit for 6 hours total in an 8-hour workday, and stand and/or walk for 6 hours total in an 8-hour workday. [Ms. Hearn] is frequently able to reach overhead, bilaterally, climb ladders, ropes, or scaffolds, ramps and stairs, balance, stoop, kneel, crouch and crawl. Mentally, she is able to understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting.

*See* Tr. 32–33. At step four, the ALJ found that Ms. Hearn was able to perform her past relevant work as a cashier/checker. *See* Tr. 42–43. Accordingly, the ALJ concluded Ms. Hearn was not disabled within the meaning of the Social Security Act (the "Act"). *Id*.

Ms. Hearn requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 216–18, 326–57. On July 15, 2021, the Appeals Council denied the request for review. *See* Tr. 1–3. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Hearn timely filed her appeal to this Court on July 19, 2021.[6] *See* Dkt. 1.

### III.   ANALYSIS

On appeal, Ms. Hearn argues the ALJ failed to properly evaluate the opinions of several medical sources: her treating primary care physician, Dr. Chad Trammell, M.D.; her treating psychiatrist, Dr. Kristen Grable, M.D.; her pain management providers, Dr. John Paul Benavides, D.O., and Dr. Norberto Vargas, M.D.; and state agency medical consultant, Dr. Paul Cherry, Ph.D.

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

*See* Dkt. 12 at 9–16. In response, the Commissioner contends the ALJ properly considered all medical source evidence in accordance with the applicable regulations. *See* Dkt. 13 at 7–15. For the reasons set forth below, the Court agrees with Ms. Hearn that the ALJ committed legal error in his consideration of Dr. Grable, Dr. Benavides, and Dr. Vargas's opinions. Accordingly, remand is warranted.[7]

### A. Applicable Law

Ms. Hearn filed her applications for DIB and SSI on September 18, 2018. *See* Tr. 27, 219–30. Therefore, the significantly revised regulations pertaining to medical opinion evidence apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. *See* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."). Pursuant to the new regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The new regulation sets forth five factors the SSA will consider in evaluating medical opinions:

(1) **Supportability**. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

---

[7] The Court does not reach Ms. Hearn's arguments concerning the opinions of Dr. Cherry and Dr. Trammell. However, on remand, the ALJ should ensure that all opinions are evaluated in accordance with the revised regulations in place for claims filed after March 27, 2017.

(2) **Consistency**. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) **Relationship with the claimant**. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

  (i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

  (ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

  (iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

  (iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

  (v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

(4) **Specialization**. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) **Other factors**. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c).

The new SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence. *See* 20 C.F.R. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he or she considered each individual medical opinion; rather, the ALJ "will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1). Second, while an ALJ must consider the factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 404.1520c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions." 20 C.F.R. § 404.1520c(b)(3).

Here, Ms. Hearn's treating pain management providers, Dr. Benavides and Dr. Vargas, answered interrogatories prepared by Ms. Hearn's attorney prior to the hearing before the ALJ. *See* Tr. 1770–83. The doctors[8] opined that Ms. Hearn had "the ability to apply commonsense understanding to carry out simple one- or two-step instructions and to deal with standardized situations with occasional or no variables in or from these situations encountered on the job in a sustained basis." *See* Tr. 1772 (emphasis removed). They also opined that Ms. Hearn, as a result of her medical impairments, was limited to standing and/or walking for no more than two hours in an eight-hour workday. *See* Tr. 1774. The doctors indicated that their opinions were supported by

---

[8] It is unclear whether both providers or just one answered the interrogatories. The signature block includes a signature above Dr. Benavides's typed name, and Dr. Vargas's name added below by hand. *See* Tr. 1773. Although it appears that Dr. Vargas answered the interrogatories on behalf of Dr. Benavides, the Court will assume out of an abundance of caution that both providers completed the form. The Court notes that the ALJ also considered both providers to be the source of the opinion. *See* Tr. 41.

Ms. Hearn's CT scan results dated July 29, 2020, and imaging. *Id.* at 1770–72. Attached to the interrogatory responses were some of Ms. Hearn's medical records. *See* Tr. 1775–83.

Ms. Hearn's treating psychiatrist, Dr. Grable, completed a mental medical source statement on August 30, 2020. *See* Tr. 1756–57. Therein, she opined that Ms. Hearn was seriously limited in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; (4) respond appropriately to demands in a routine work setting on a sustained basis; and (5) distinguish between acceptable and unacceptable work performance on a sustained basis. *See* Tr. 1756–57. Dr. Grable noted that Ms. Hearn's depressive disorder was characterized by depressed mood, diminished interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, and difficulty concentrating or thinking. *See* Tr. 1758; *see also* Tr. 1757 (noting that Ms. Hearn had a depressed mood with accompanying physical and psychological symptoms, with her borderline intellectual capacity also playing a role).

In his decision, after summarizing the opinions of Dr. Benavides, Dr. Vargas, and Dr. Grable, the ALJ evaluated the opinions together and determined that both were unpersuasive. *See* Tr. 41. The ALJ explained:

> The above sources [Benavides, Vargas, Dr. Grable] opined, in essence, that [Ms. Hearn] lacks the exertional and nonexertional ability to perform even unskilled sedentary work.
> . . . .
> In this case, there is no indication that the record is ambiguous, unclear or incomplete, only that the record does not support [Ms. Hearn's] own medical sources' conclusion regarding function nor is there any subjective complaint or objective test in the providers own records or the record as a whole, that would support such a disabling medical opinion. The doctor's conclusion is not consistent nor contemplated in any of the medical records nor the doctor's own treatment records, as detailed above. Ultimately, the records do not indicate progressive medical intervention has been required. [Ms. Hearn] has not required inpatient psychiatric hospitalization, or surgical intervention for her lumbar and cervical degenerative disc disease. Her medications have remained fairly consistent and she

9

has not required frequent dosage adjustments or medication changes. As such, these opinions of function are not persuasive.

*See* Tr. 41.

As to the opinions of Dr. Grable, Dr. Benavides, and Dr. Vargas, Ms. Hearn argues the ALJ committed legal error by failing to meet the articulation requirements of the new SSA regulations. The Court agrees. Although the regulations explicitly authorize the ALJ to consider multiple medical opinions from a single source together in a single analysis, *see* 20 C.F.R. § 404.1520c(b)(1), the regulations do not permit an ALJ to conduct a single analysis of multiple medical source opinions, particularly where the opinions concern different areas. Here, the opinions at issue were vastly different—Dr. Grable's opinion concerned Ms. Hearn's mental impairments whereas the pain management doctors addressed Ms. Hearn's physical impairments. Accordingly, the ALJ committed legal error by conducting a single analysis of multiple medical source opinions.

The Commissioner concedes that the ALJ collectively addressed the opinions rather than making discrete findings as to each medical source individually, but argues the Court should still affirm because judicial review is not precluded by the ALJ's "unconventional presentation of the requisite factual findings." *See* Dkt. 13 at 14. This argument falls short because the ALJ also failed to adequately consider the factors used to evaluate the persuasiveness of the opinions. Although the ALJ was required, at a minimum, to articulate his consideration of two factors—supportability and consistency—he only provided general boilerplate statements as to each factor for all three sources collectively: "the record does not support [Ms. Hearn's] own medical sources' conclusion regarding function" and "[t]he doctor's conclusion is not consistent nor contemplated in any of the medical records nor the doctor's own treatment records." *See* Tr. 41. Neither statement permits meaningful judicial review, as the Court can only speculate as to why each opinion was not

supported by, or was inconsistent with, the medical evidence in the record. Although the pain management providers referenced medical evidence including imaging and CT scan results, the ALJ did not explain why such evidence did not support the limitations assessed in the opinions. Likewise, Dr. Grable pointed to mental examination findings that purportedly supported her opinion, but the ALJ did not explain why Dr. Grable's treatment notes did not support the limitations she assessed in her opinion. *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (holding the ALJ properly applied the relevant legal standards by considering "both the consistency and supportability of Dr. Small's testimony in light of other medical opinions and evidence in the record[.]"); *see also Bridges v. Comm'r of Soc. Sec.*, No. 4:20-cv-89, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021) ("Stating that a provider's records 'contained no objective findings,' to support an opinion, without any further explanation, is meaningless boilerplate."); *Guy v. Comm'r of Soc. Sec.*, No. 4:20-cv-1122, 2022 WL 1008039, at *4 (N.D. Tex. Mar. 14, 2022) ("By failing to provide a persuasiveness finding—particularly in light of the supportability and consistency factors—the ALJ left Guy without an explanation for her claim's denial and left the Court with an incomplete record incapable of facilitating meaningful judicial review.").

Finally, the Commissioner raises concerns over the probative value of the checkbox-style forms and interrogatories used by Dr. Benavides, Dr. Vargas, and Dr. Grable. *See* Dkt. 13 at 13. However, even if the Court were to share these concerns, the ALJ did not raise any concerns regarding the use of such forms and interrogatories in his written decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."); *Gittens v. Astrue*, No. 3:04-cv-2363, 2008 WL 631215, at *5 (N.D. Tex. Feb. 29, 2008) ("While on remand, an ALJ may find that the checklist is inconsistent with

other medical evidence, but that determination must be made by the ALJ, not the court."). Due to the ALJ's failure to meet the articulation requirements for evaluation of medical source opinions, the Court finds that remand is warranted.

### IV.     RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 30th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE